# 22-2079

## United States Court of Appeals

*for the*

## Second Circuit

➤➤ ◄◄

In Re: JBR, INC.,

*Petitioner,*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JBR, INC., DBA Rogers Family Company,

*Petitioner,*

— v. —

KEURIG GREEN MOUNTAIN INC., as successor to Keurig, Incorporated,
FKA Green Mountain Coffee Roasters Inc.,

*Respondent.*

———————————————

ON PETITION FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## RESPONSE BRIEF OF DEFENDANT-RESPONDENT TO PETITION FOR WRIT OF MANDAMUS

CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500

BUCHANAN INGERSOLL & ROONEY, P.C.
**Wendelynne J. Newton**
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800

*Counsel for Defendant-Respondent Keurig
Green Mountain, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Respondent Keurig Green Mountain, Inc. ("Keurig"), f/k/a Green Mountain Coffee Roasters, Inc., and as successor to Keurig, Incorporated, by its undersigned counsel, certifies as follows:

Keurig is a subsidiary of Keurig Dr Pepper Inc., a publicly held corporation. To Keurig's knowledge, no other publicly held corporation owns 10% or more of Keurig or the common stock of Keurig Dr Pepper Inc.

 Dated: April 18, 2023

/s/ Leah Brannon
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
lbrannon@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999
*Counsel for Defendant-Respondent*
*Keurig Green Mountain, Inc.*

i

## TABLE OF CONTENTS

COUNTER-STATEMENT OF ISSUES....................................................................1

COUNTER-STATEMENT OF THE CASE ...........................................................2

    A.    Plaintiffs Filed Duplicative Claims .......................................................3

    B.    The JPML Decided To Centralize The Actions ....................................4

    C.    JBR Unsuccessfully Moved For A Preliminary Injunction .................5

    D.    JBR And Other Plaintiffs Took Expansive Discovery For Years.........7

    E.    JBR's Remand Motions Were Denied By Judge Broderick And The
        JPML .....................................................................................................10

    F.    The Parties Briefed Substantial Motions And Judge Broderick
        Continues To Manage The MDL .........................................................13

SUMMARY OF THE ARGUMENT .....................................................................14

STANDARD OF REVIEW ...................................................................................16

ARGUMENT..........................................................................................................17

I.    JBR Has Not Suffered Extraordinary Delay That Clearly And Indisputably
      Warrants Mandamus Relief...........................................................................17

    A.    Judge Broderick Has Taken Action On The Motions.........................18

    B.    The *Keurig* Antitrust MDL Has Not Been Unduly Delayed .............21

    C.    The Writ Is Not Appropriate Under The Circumstances ....................23

II.    JBR's Case Should Not Be Severed Or Remanded Until Pending Motions
       Are Resolved .................................................................................................25

CONCLUSION ......................................................................................................29

CERTIFICATE OF COMPLIANCE .....................................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Cheney v. United States District Court*,
   542 U.S. 367 (2004)............................................................................16

*In re Brand–Name Prescription Drugs Antitrust Litig.*,
   264 F. Supp. 2d 1372 (J.P.M.L. 2003) ............................................27

*In Re: Domestic Airline Travel Antitrust Litig.*,
   MDL No. 2656 (D.D.C. 2015) ...........................................................22

*In re United States ex rel. Drummond,*
   886 F.3d 448 (5th Cir. 2018) .............................................................20

*In re Elec. Books Antitrust Litig.*,
   No. 11 MD 2293 (DLC), 2014 WL 1642813 (S.D.N.Y. Apr. 24, 2014)..........26

*In re Evergreen Valley Project Litig.*,
   435 F. Supp. 923 (J.P.M.L. 1977) .....................................................27

*In re Harris County*,
   Case No. 21-3637, ECF No. 6-1 (6th Cir. March 11, 2022) ....................... 27-28

*In re Heritage Bonds Litig.*,
   217 F. Supp. 2d 1369 (J.P.M.L. 2002) .............................................26

*In re: Interest Rate Swaps Antitrust Litig.*,
   MDL No. 2704 (S.D.N.Y. 2016) .....................................................22

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   No. 14-cv-4242, 2014 WL 12778832 (S.D.N.Y. Sept. 19, 2014).....................6

*In re: London Silver Fixing, Ltd. Antitrust Litig.*,
   MDL No. 2573 (S.D.N.Y. 2014) .....................................................21

iii

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
  MDL No. 1945, 2011 WL 1046162 (S.D.N.Y. Mar. 22, 2011) ........................26

*In re World Trade Center Disaster Site Litig.*,
  722 F.3d 483 (2d Cir. 2013) ................................................19

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
  618 F. App'x 31 (2d Cir. 2015) ...........................................7

*Johnson v. Rogers,*
  917 F.2d 1283 (10th Cir. 1990) ..........................................21

*Lehmann v. Ohr Pharm., Inc.*,
  No. 20-4185-cv, 2021 WL 5986761 (2d Cir. Dec. 16, 2021) ...........19

*Linde v. Arab Bank, PLC,*
  706 F.3d 92 (2d Cir. 2013) ...........................................17, 25

*Madden v. Myers*,
  102 F.3d 74 (3d Cir. 1996) ...............................................20

*McKay v. Novartis Pharmaceutical Corp.*,
  751 F.3d 694 (5th Cir. 2014) ............................................27

*Orange Cnty. Water Dist. v. Unocal Corp.*,
  584 F.3d 43 (2d Cir. 2009) ...............................................25

*Philip Morris Inc. v. National Asbestos Workers Medical Fund*,
  214 F.3d 132 (2d Cir. 2000) .............................................19

**Statutes & Other Authorities:**

28 U.S.C. § 1407 ..............................................................4

## COUNTER-STATEMENT OF ISSUES

1.  Has Petitioner JBR, Inc. ("JBR") shown that it is clearly and indisputably entitled to the extraordinary relief of an order directing the district court to resolve two summary judgment motions (with 545 pages of briefing) and 14 *Daubert* motions within 10 business days, where the district court is actively managing this massive antitrust MDL?

2.  Has JBR shown that it is clearly and indisputably entitled to severance of its case from the MDL and remand to the Eastern District of California while summary judgment and *Daubert* motions are pending, and that both the district court and the Judicial Panel on Multidistrict Litigation abused their discretion by denying this relief after finding that it would create the risk of inconsistent rulings and squander judicial and party resources?

## COUNTER-STATEMENT OF THE CASE

Mandamus relief is reserved for extraordinary circumstances to rectify a clear abuse of judicial discretion or duty. No such circumstances are present here.

JBR complains of delay because its case has been centralized in the *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* MDL together with other cases asserting substantially the same claims based on the same alleged facts. This is not an extraordinary circumstance: it is the very nature of multidistrict litigation, which maximizes efficiency for all parties and the judiciary through coordinated pretrial proceedings. JBR and the other plaintiffs have obtained expansive discovery of Keurig and numerous third parties through the MDL proceedings. Indeed, JBR's insistence on exceptionally broad discovery and multiple extensions of time have contributed significantly to the duration of this litigation. JBR's desire to exit the MDL now and put its case on a separate track does not warrant mandamus relief.

JBR's demand for an early exit has been denied repeatedly, including by the Judicial Panel on Multidistrict Litigation. Although JBR's petition does not disclose this fact, the Panel denied JBR's requested relief, explaining that remand of JBR's case would not serve judicial efficiency or the interests of all parties in light of pending pretrial motions raising issues that are common to the cases. JBR argues to this Court that the pending motions are not being resolved quickly

2

enough, but the district court is handling numerous motions including cross-motions for summary judgment and fourteen *Daubert* motions, and it would create the risk of inconsistent rulings and waste judicial resources to have separate district courts resolve identical pretrial issues. Indeed, Judge Broderick's determination of the pending motions may fully resolve all of the cases, thus obviating the need for any further proceedings in any of the transferor courts.

Judge Broderick has set forth an orderly plan for resolving the pending motions, and JBR has not met the high bar required for the extraordinary remedy of mandamus relief.

## A.    Plaintiffs Filed Duplicative Claims

Keurig developed an innovative, easy-to-use coffee brewing system consisting of a brewer and compatible single-serve portion packs. Over the years, Keurig invested heavily in improving the system and marketing its benefits to consumers. Recognizing the popularity of the Keurig brewing system, more than a dozen competitors entered the portion pack business, selling their own portion packs for use in Keurig brewers.

In 2014, one of those portion pack competitors, TreeHouse Foods, filed suit in the Southern District of New York. TreeHouse alleged that Keurig violated the antitrust laws including by developing its then-forthcoming 2.0 Brewer, designed for use only with portion packs manufactured by Keurig. JBR, another competitor

3

plaintiff, subsequently filed essentially the same suit, but in the Eastern District of California. Numerous other plaintiffs also filed copycat suits in various other courts. These included suits by purported direct purchaser plaintiffs and indirect purchaser plaintiffs. In early 2019, a putative direct purchaser class member, McLane, filed its own complaint. And, in summer 2021, two more purchaser actions were filed by BJ's Wholesale Club, Inc. and Winn-Dixie Stores, Inc.

## B. The JPML Decided To Centralize The Actions

Within six weeks after filing its complaint, JBR filed a preliminary injunction motion and a motion for expedited discovery in the Eastern District of California. Keurig moved for a stay pending the JPML's resolution of a motion under 28 U.S.C. § 1407 to coordinate JBR's case along with other similar actions for pretrial proceedings. The Eastern District of California granted this stay over JBR's opposition. As now-Chief Judge Mueller explained, in light of the JPML process underway, overseeing JBR's motions for expedited discovery and a preliminary injunction "would be a waste of judicial resources." Supp. App. 5 (E.D. Cal. Order granting stay).[1]

---

[1] "Supp. App." refers to the Supplemental Appendix filed by Defendant-Respondent Keurig along with this Response. "Original Petition" refers to JBR's September 22, 2022 Petition for a Writ of Mandamus, and "Add." refers to the Addendum that JBR filed with the Original Petition. "Renewed Petition" refers to JBR's January 19, 2023 Renewed Petition for a Writ of Mandamus, and "Renewed Pet. Add." refers to the Addendum JBR filed with the Renewed Petition.

On June 3, 2014, the JPML ordered centralization of JBR's case and 25 other cases against Keurig before Judge Broderick in the Southern District of New York. Add.283-285. As the JPML explained, "[a]ll of the actions … raise virtually identical factual questions concerning the conduct of Keurig … in allegedly monopolizing the market for single-serve coffee cups used in Keurig brewing machines." Add.284. In particular, the cases included common allegations concerning "acquisition of competitors, entering into exclusionary agreements with suppliers and distributors …, engaging in sham patent infringement litigation, and a product redesign … that allegedly will 'lock-out' competitors' products." Add.284.

In light of substantial commonality of legal and factual issues across the cases, including JBR's, the JPML concluded that centralization would "eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to class certification and preliminary injunctive relief); and conserve the resources of the parties, their counsel and the judiciary." Add.284.

## C.   JBR Unsuccessfully Moved For A Preliminary Injunction

After centralization, JBR demanded Judge Broderick's immediate attention to its renewed motions for expedited discovery and a preliminary injunction. Specifically, JBR sought to enjoin Keurig's launch of its 2.0 Brewer, which JBR told the court would "lock out" JBR from the market, risking JBR defaulting on its

loans and putting the company out of business. Judge Broderick granted JBR's request for expedited discovery and put JBR's motion on a fast track for early resolution. Add.339-343. No other plaintiff joined JBR in seeking a preliminary injunction, not even TreeHouse, the first plaintiff to file suit and the other competitor in this MDL.

On September 3 and 4, 2014, Judge Broderick conducted a two-day evidentiary hearing on JBR's preliminary injunction motion, at which he received more than 120 exhibits and extensive argument. *See* Add.18. On September 19, 2014, Judge Broderick denied JBR's motion. *See In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, No. 14-cv-4242, 2014 WL 12778832 (S.D.N.Y. Sept. 19, 2014). Judge Broderick held that JBR failed to show that it faced irreparable injury from Keurig's introduction of its 2.0 Brewer, including because, by "JBR's own admission, there will remain a significant market for 1.0-compatible portion packs for the next several years." *Id.* at *7. Thus, JBR could continue "to serve the existing installed base of 1.0-compatible brewers," even if its portion packs would not work in the new 2.0 Brewer. *Id.* Judge Broderick found that JBR failed to produce evidence that its sales would decrease due to the introduction of the 2.0 Brewer, *id.* at *7-8, and noted the possibility that unlicensed packs like JBR's might even brew in the 2.0 Brewer, *id.* at *3, *9.

6

Shortly after losing its motion for a preliminary injunction, JBR announced that its packs would in fact brew in the 2.0 brewer, resulting in national press coverage and record sales for JBR. Supp. App. 66, 108 (Keurig's Motion for Summary Judgment) (JBR's "website crashed" under the heavy volume of consumer orders and interest in its product). Remarkably, however, JBR nonetheless *appealed* Judge Broderick's decision holding that JBR had failed to show irreparable injury. The following year, the Second Circuit affirmed Judge Broderick's decision in a summary order, holding that the district court did not err in concluding that JBR had failed to make the requisite showing of irreparable injury. *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33-34 (2d Cir. 2015) (noting that JBR actually projected higher sales after the 2.0 Brewer launch).

## D. JBR And Other Plaintiffs Took Expansive Discovery For Years

After bringing an unsuccessful preliminary injunction motion and an unsuccessful appeal, JBR continued to demand that significant court and party resources be devoted to its claim.

In late 2014, Keurig moved to dismiss. Rather than opposing, the various plaintiff groups in the MDL substantially amended their complaints. The amended complaints spanned *470 pages*. Even though portion pack competitors had publicly announced that their packs now worked in the 2.0 Brewer, plaintiffs retained their original claims attacking the 2.0 Brewer as a closed system, but also

7

added new claims, including that the 2.0 Brewer was so easy to hack that Keurig should never have said it was designed to be closed in the first place. *See, e.g.*, Add.485-487 (alleging competitors were "locked out" by the 2.0 Brewer); Add.490 (accusing Keurig of false advertising because competitors successfully developed 2.0-compatible packs before the 2.0 Brewer even appeared on retail shelves). Keurig filed motions to dismiss the amended complaints. Add.27 (Dkt. Nos. 223, 226, 229, 231). In May 2015 briefing on the motions concluded, resulting in 298 pages of briefing. Add.30 (Dkt. Nos. 261, 264, 265, 267). In July 2015, Judge Broderick held a hearing on the motions. Add.33.

While Keurig's motions to dismiss were pending, Judge Broderick directed the parties to cooperate on a variety of discovery measures designed to move the cases promptly into discovery upon his ruling on the motions to dismiss. In August 2016, Judge Broderick partially lifted the stay of discovery for all actions, Add.659-660, and in November 2017 largely denied Keurig's motion to dismiss, Add.667-671, subsequently issuing a 114-page opinion detailing the reasons for the order, Add.672-785.

Plaintiffs, including JBR, demanded and obtained truly massive discovery. JBR later complained to the JPML that it was "forced to participate in 4+ years of massive, coordinated discovery." Supp. App. 150 (JBR's Motion to Remand). But ***JBR repeatedly advocated for the sweeping discovery it now complains about***.

8

For example, JBR, joined by other plaintiffs, demanded an extraordinary 2,950 hours of depositions and actively opposed Keurig's request for more focused and narrower discovery. *See* Supp. App. 176-178 (Hr'g Tr. Regarding Scope of Depositions) (argument by JBR's counsel opposing discovery limits requested by Keurig); *see also* Supp. App. 189, 194-195, 201-202 (Joint Status Update) (similar). Magistrate Judge Pitman granted most of what JBR wanted. Supp. App. 219 (MDL Discovery Order) (order granting 1,000 hours of party depositions and 600 hours of non-party depositions). JBR also demanded 81 Keurig document custodians—more than triple Keurig's proposal—and ultimately received documents from 54 Keurig custodians, which also contributed significantly to the burden and time required for document discovery. Supp. App. 172 (Hr'g Tr. Regarding Scope of Depositions). When Keurig later sought to limit nonparty discovery given the extensive discovery that had already taken place, JBR opposed that request. Supp. App. 225-227 (Pls.' Opp. to Keurig's Mot. Seeking to Limit Non-Party Depositions).

JBR and the other plaintiffs also sought and obtained multiple extensions of discovery deadlines. *See, e.g.*, Supp. App. 230 (Joint Letter Regarding MDL Schedule) (successfully seeking four-month extension for plaintiffs to take more discovery); Add.805-806 (JBR's counsel arguing that a four-month extension was "the bare minimum" acceptable to JBR); Supp. App. 235 (Pls.' Emergency Letter

Mot. Regarding MDL Schedule) (plaintiffs requesting another four-month extension of discovery, which was granted in part).

As JBR has pointed out, discovery ran for years. Judge Broderick, Magistrate Judge Pitman (ret.), and Magistrate Judge Cave held more than two dozen hearings and court conferences along the way. When fact discovery in the original wave of cases finally ended in June 2020 the parties had collectively produced approximately 9 million documents (in addition to 1.5 million documents produced by third parties) and conducted nearly 200 depositions of parties and non-parties. In April 2021, the parties completed expert discovery in the original set of cases, with two dozen experts producing 7,000 pages of reports.

**E.** **JBR's Remand Motions Were Denied By Judge Broderick And The JPML**

On April 8, 2021, JBR filed a motion for remand. Add.162 (Dkt. Nos. 1275, 1277). Judge Broderick denied that motion, holding that JBR failed to show good cause for remanding its case prior to the completion of pretrial proceedings including summary judgment and *Daubert* motions. Add.935-942. This ruling was fully consistent with established law holding that, when cases are coordinated in an MDL proceeding, they should remain coordinated through the completion of pretrial proceedings, including summary judgment and *Daubert* motions, and indeed this is part of the reason why cases are transferred and centralized in an MDL in the first place. Add.938-939.

10

Judge Broderick specifically held that transferring JBR's case back to the Eastern District of California would not ensure the "maximum efficiency for all parties and the judiciary" for two important reasons. Add.939-942. First, transfer prior to resolution of summary judgment and *Daubert* motions on common issues would create the risk of inconsistent rulings, and JBR acknowledged that, under its proposal, "two courts would be deciding similar issues" and "duplicating efforts." Add.940. Second, it would be "far more efficient" for Judge Broderick to address the motions, given that the case has been consolidated before him for years, "during which time [he and] Judge Cave [have] become well acquainted with the parties, facts, and legal issues." Add.940. Judge Broderick concluded it would be "highly inefficient—and arguably prejudicial to the Eastern District of California—to transfer such a motion to a judge who, while surely capable, has not seen this case or reviewed the record in years." Add.941. By contrast, Judge Broderick's ruling on Keurig's summary judgment motion could resolve the entire litigation or at least "narrow the issues in the case, meaning that there would be fewer issues for the California court to potentially resolve and try." Add.941.

Unsatisfied with this ruling, JBR moved the JPML for remand of its case to the Eastern District of California. The JPML reviewed JBR's motion and supporting filings and denied JBR's request. Supp. App. 241 (JPML Order Denying Remand). Specifically, the JPML "reviewed the record" and found that

11

"it amply supports" Judge Broderick's decision to keep JBR's case in the MDL while summary judgment and *Daubert* motions were pending. Supp. App. 241. The JPML concluded that JBR's arguments for remand "simply ignore the common issues that are raised in the pending *Daubert* and summary judgment motions," which include "defining the relevant market, determining whether harm to competition occurred, and determining whether Keurig's acquisitions, brewer redesign, alleged tying arrangements, and agreements with distributors, suppliers, and other entities violated federal antitrust law. These are among the core factual and legal issues in the MDL." Supp. App. 242.

The JPML also found that JBR's "alleged prejudice from a delay in proceeding to trial" was "unpersuasive." Supp. App. 242 (citing *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012) ("Centralization is based on 'the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.'")).

Strikingly, **JBR's mandamus petition to this Court never once mentions its request to the JPML, or the JMPL's decision denying that request**. This highly relevant legal authority directly adverse to JBR's request here is a significant fact to omit from a petition asking this Court for the same relief.

12

**F.     The Parties Briefed Substantial Motions And Judge Broderick
Continues To Manage The MDL**

On June 7, 2021, Judge Broderick granted final approval of the Indirect

Purchaser Plaintiff settlement with Keurig.  *See* Add.179 (Dkt. No. 1394).  JBR

and TreeHouse "opted out" of the class settlement, but then lodged a "contingent

objection" seeking to derail resolution of the case, despite clear precedent

establishing that class settlement opt-outs lack standing to object to a settlement.

*See* Add.170 (Dkt. No. 1327).  Judge Broderick denied the "contingent objection"

on that basis, but not before JBR's improper filing necessitated a contested

settlement approval hearing.  Supp. App. 244 (Order Denying Objection).

From May through December 2021, the parties briefed many substantial

motions, including the direct purchaser plaintiffs' motion for class certification, 14

*Daubert* motions, and summary judgment motions filed by Keurig and Plaintiffs.

The summary judgment motions also involve extensive compilations of undisputed

facts.  Notably, while JBR and the other plaintiffs' fundamental claim is that

Keurig monopolized a purported market for Keurig-compatible portion packs, it is

now undisputed that **more than a dozen competitors have entered** this allegedly

monopolized market and sold billions of portion packs, **portion pack output has**

**increased dramatically**, and portion pack **prices have fallen**.  *See* Supp. App. 32,

42-43, 49, 71-72 (Keurig's Motion for Summary Judgment).  These undisputed

facts are flatly incompatible with an antitrust claim.

13

JBR nonetheless joined with the other plaintiffs in filing a 115-page motion for summary judgment. Add.194 (Dkt. No. 1492). And plaintiffs including JBR also filed a 115-page joint opposition to Keurig's summary judgment motion, which included **435 footnotes** in 10-point font. Add.202 (Dkt. No. 1563). In total, the cross-motions for summary judgment resulted in 545 pages of briefing. These summary judgment motions have been pending since December 15, 2021, and Judge Broderick has laid out a sequence under which he is resolving them as well as the other motions before him. Renewed Pet. Add.112.

In addition, in the midst of summary judgment briefing, two additional cases were filed. These cases, brought by plaintiffs BJ's and Winn-Dixie, proceeded through fast-paced supplemental fact discovery and expert discovery in 2022 and early 2023. The district court has actively overseen this additional litigation and JBR sought and obtained the right to receive this additional discovery. Supp. App. 248 (Pls.' Object. to Case Mgmt. Plan) (JBR and other plaintiffs demanding access to BJ's discovery because it may "lead to additional evidence for trials" in their cases); Supp. App. 250 (Amen. Prelim. Case Mgmt. Plan) (allowing access).

## SUMMARY OF THE ARGUMENT

JBR requests unprecedented relief. JBR petitions this Court to order Judge Broderick "to decide the pending matters (including summary judgment and *Daubert* motions)" within 10 business days. Renewed Petition at 2. In the

14

alternative, JBR asks this Court to order Judge Broderick "to sever JBR's involvement as a moving party or affected party in all pending motions in the Southern District of New York" so that JBR can "file new motions" in the Eastern District of California on remand, covering the same exact issues that are pending before Judge Broderick. *Id.* at 2, 10.

First, JBR has not shown that Judge Broderick has abused his discretion or refused to exercise jurisdiction over JBR's case. Judge Broderick has managed this expansive, multi-party antitrust litigation for years, and has set out a plan for resolving pending motions while continuing to oversee activity in this MDL.

JBR complains that this MDL has been ongoing for 8.5 years, and summary judgment motions have been pending for nearly 1.5 years, but that is not unusual for an antitrust MDL, as discussed further below. The *Keurig* MDL centralizes two separate competitor suits (brought by JBR and TreeHouse); three separate individual purchaser suits (brought by McLane, BJ's, and Winn-Dixie); a consolidated Direct Purchaser Plaintiff putative class action; and a consolidated Indirect Purchaser Plaintiff class case that has been resolved. JBR's wide-ranging 95-page complaint alone asserts 17 purported causes of action. *See* Add.551, 625-647. Judge Broderick has worked extensively on this MDL over the years including on numerous and often unsuccessful motions brought or joined by JBR. JBR has not shown that it is clearly entitled to extraordinary relief.

15

Second, JBR has not shown that Judge Broderick and the JPML abused their discretion by declining to remand JBR's case to the Eastern District of California while summary judgment and *Daubert* motions are pending. Judge Broderick has heard JBR's arguments for remand multiple times, and explained why remand would not serve the interests of the parties and judicial efficiency. JBR also sought remand from the JPML, which agreed with Judge Broderick's assessment and denied transfer until the pending motions are decided. JBR omits this fact entirely from its Petitions. JBR has not shown that Judge Broderick and the JPML erred, let alone that they clearly abused their discretion. Thus JBR has not shown that it is clearly entitled to the extraordinary relief it seeks.

## STANDARD OF REVIEW

Mandamus is only granted in "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Cheney v. United States District Court*, 542 U.S. 367, 380 (2004) (citations and quotation marks omitted). Three demanding conditions must all be satisfied before the writ may issue: (1) the petitioner must "have no other adequate means to attain the relief [it] desires"; (2) the petitioner must show that its "right to issuance of the writ is clear and indisputable"; ***and*** (3) the issuing court "must be satisfied that the writ is appropriate under the circumstances." *Id.* at 380-81 (citations and quotations omitted).

16

The first condition requires a petitioner to show that it has no other adequate means to obtain relief. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 117 (2d Cir. 2013). Generally, the normal appellate review process is sufficient, and a petitioner's concern "about the delay between an adverse trial judgment and vindication on appeal" does not warrant mandamus relief. *Id.* at 117-19. The second condition requires a petitioner to show that the district court committed "a clear and indisputable abuse of its discretion" or usurpation of judicial authority. *Id.* at 107. Where the district court has broad discretion to resolve an issue in the first instance, this standard is extremely unlikely to be met. Finally, the third condition requires extraordinary circumstances, such as novel issues or a district court's flagrant misapplication of a well-settled principle of law sufficient to justify issuance of the writ. *See id.* at 108, 119-20.

## ARGUMENT

### I.   JBR Has Not Suffered Extraordinary Delay That Clearly And Indisputably Warrants Mandamus Relief

JBR cannot establish any of the conditions required for mandamus, much less all three. JBR argues this Court should set a 10-business-day deadline for resolution of motions because Judge Broderick failed to respond to this Court's direction and otherwise delayed this litigation. Neither claim is accurate.

17

### A.   Judge Broderick Has Taken Action On The Motions

In January 2023 Judge Broderick took action on a number of the motions that JBR claimed were pending for too long, and he set forth a sequence under which he is proceeding through the remaining motions.  *See* Original Petition at 10 (asserting that 60 motions had been pending more than six months).  In his January order, Judge Broderick resolved 12 motions to seal materials that will be considered—and may be cited in—rulings on the class certification, *Daubert*, and summary judgment motions.

In his 49-page opinion, Judge Broderick also suggested that the parties consider retaining a special master to resolve the remaining 25 sealing motions based on his guidance as to the first 12 motions to seal.  Renewed Pet. Add.111. This suggestion offers a simple means by which JBR could accelerate matters. Keurig responded to Judge Broderick's suggestion and proposed that the parties jointly retain a special master.  JBR and the other plaintiffs flatly rejected this idea. Supp. App. 259-260 (Joint Letter on Sealing Issues).  The fact that JBR had alternate means to expedite the MDL through cooperative case management and chose instead to pursue extraordinary relief from this Court precludes JBR from meeting the first condition required for mandamus.

JBR also cannot show a clear and indisputable right to relief.  Judge Broderick's January opinion and order sets out a plan to resolve the remaining

18

motions—including class certification, *Daubert* motions, and summary judgment. JBR inaccurately states the contrary, telling this Court that "Judge Broderick has no current plans to rule on any of the motions." Renewed Petition at 7. In fact, Judge Broderick's opinion states that he and Magistrate Judge Cave "will continue to move the adjudication of this case forward as expeditiously as possible," and he will "resolve two pending objections made under Fed. R. Civ. P. 72, and the class certification request as soon as practicable." Renewed Pet. Add.112. "Following the resolution of these motions, [he] will address the parties' *Daubert* motions, … [and] the pending motions for summary judgment." Renewed Pet. Add.112.

JBR's dissatisfaction with this logical sequence is not a valid basis for mandamus relief. A district court has "broad discretion" to manage its docket. *Lehmann v. Ohr Pharm., Inc.*, No. 20-4185-cv, 2021 WL 5986761, at *1 n.1 (2d Cir. Dec. 16, 2021). In complex cases, this Court affords district courts "particular deference" when reviewing a district court's management of its docket to achieve "orderly and expeditious disposition of cases." *In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013); *see also Philip Morris Inc. v. National Asbestos Workers Medical Fund*, 214 F.3d 132, 135 (2d Cir. 2000) (declining to exercise mandamus authority to direct the district court to decide class certification because the district court did not definitively refuse to rule on the motion before trial).

19

JBR offers no example of this Court exercising its extraordinary mandamus authority in circumstances like those present here. JBR cites *In re United States ex rel. Drummond*, 886 F.3d 448 (5th Cir. 2018), as an example of mandamus relief ordering a "district court to hear and adjudicate two pending summary judgment motions within 30 days." *See* Original Petition at 16. But *Drummond* involved a **single False Claims Act case**, and **the summary judgment motion at issue had been pending for "approximately four years"** without any action by the district court. *Drummond*, 886 F.3d at 449-50. The extreme circumstances of *Drummond* demonstrate why mandamus relief is inappropriate here. The present case involves a broad antitrust MDL involving many parties and claims. The pending summary judgment motions include 545 pages of briefing plus statements of undisputed fact running many hundreds of pages more. The motions have been pending for less than one-and-a-half years, and Judge Broderick is actively working toward their resolution and overseeing continued activity in this MDL proceeding.

JBR also cites *Madden v. Myers*, 102 F.3d 74 (3d Cir. 1996), but in that case the Third Circuit ***denied*** mandamus relief. The *Madden* court observed that, in the unique context of a habeas petition, which is specially designed to afford prisoners speedy relief from potential constitutional violations, undue delay by the district court may warrant mandamus relief, but in that case the delay did *not* amount to denial of due process. *Id.* at 79. JBR's other cited cases are also out-of-circuit

20

rulings regarding delay in resolving habeas petitions.  *See* Original Petition at 16,

citing *Johnson v. Rogers*, 917 F.2d 1283, 1284-85 (10th Cir. 1990) (delay of 14

months was impermissible because a habeas petition is intended to offer a "swift

and imperative remedy").

> **B.      The *Keurig* Antitrust MDL Has Not Been Unduly Delayed**

JBR also claims more broadly that the litigation has been unduly delayed,

and that this warrants mandamus relief.  Again, JBR cannot meet the three

conditions required for mandamus relief.

It takes substantial time and judicial resources to complete pretrial

proceedings in an antitrust MDL.  To take just two examples from other antitrust

MDLs currently pending in the Southern District of New York:

First, *In re: London Silver Fixing, Ltd. Antitrust Litigation*, MDL No. 2573

(S.D.N.Y. 2014) (the "*Silver Fixing* MDL"), has been pending since October 9,

2014—only four months less than the *Keurig* MDL.  Supp. App. 268-273 (*Silver

Fixing* Docket).  Even though the MDL has been pending for more than eight

years, the parties have only recently concluded briefing on a motion for judgment

on the pleadings in January 2023, and class certification briefing has been stayed in

the meantime.  Supp. App. 268-273 (Dkt. Nos. 588, 599, 605, 606, 607, 611).  By

comparison, Judge Broderick denied Keurig's request to sequence class

certification and summary judgment briefing and ordered the parties to brief all of

the motions on a single back-to-back schedule. As a result, in the MDL against
Keurig the parties have already fully briefed class certification, summary
judgment, and 14 *Daubert* motions.

Second, *In re: Interest Rate Swaps Antitrust Litigation*, MDL No. 2704
(S.D.N.Y. 2016) (the "*Interest Rate Swaps* MDL"), has been pending since June 3,
2016. Supp. App. 274-295 (*Interest Rate Swaps* Docket). A class certification
motion, and related *Daubert* motions, have been fully briefed and pending since
December 17, 2019—***nearly three-and-a-half years***. Supp. App. 274-295 (Dkt.
Nos. 722, 723, 815, 869, 891). By contrast, class certification has been pending in
the *Keurig* MDL for about half as long. This is not unusual. *See also In Re:
Domestic Airline Travel Antitrust Litigation*, MDL No. 2656 (D.D.C. 2015)
(summary judgment fully briefed and pending since July 2021). Supp. App. 296-
309 (*Domestic Airline* Docket Dkt. Nos. 497, 500, 548, 572, 574).

In addition, JBR complains that, overall, Judge Broderick has 124 motions
pending on the "six month list." Original Petition at 10-11. But the most recent
list shows Judge Broderick has made substantial progress on outstanding motions.
Supp. App. 310-313 (Report of Motions Pending Over Six Months) (listing 87
pending motions as of September 2022, 53 of which have an "Opinion/Decision in
Draft"); *see also* Renewed Petition at 8 (JBR acknowledging that Judge Broderick
has been issuing orders in "20 other pending cases"). Judge Broderick's approach

22

to this case is not at all unusual for a massive antitrust MDL, and JBR's repeated demands for extraordinary relief from this Court should be denied.

## C. The Writ Is Not Appropriate Under The Circumstances

JBR's demand for extraordinary relief also fails for the independent reason that the writ is not appropriate under the circumstances. JBR argues that this Court should grant the writ because the pace of this MDL has caused loss of evidence. Original Petition at 5. But ***JBR did not join*** the spoliation motion before Magistrate Judge Cave that it cites for its unfounded claims of prejudice. Add.1043 (motion by TreeHouse, McLane, and Direct Purchaser Plaintiffs). And Magistrate Judge Cave's order on that motion, which Keurig has appealed, did not find that any of the moving plaintiffs lost access to unique, relevant data, much less that any purported loss was the result of claimed delays in the MDL.

Indeed, Magistrate Judge Cave found that this was "not . . . a case in which Plaintiffs are bereft of evidence to support their claims." Add.1085-1086. Specifically, Magistrate Judge Cave found:

> Keurig: (i) issued litigation hold notices to over 700 custodians; (ii) collected documents from 54 Agreed Custodians as well as non-custodial sources agreed by the parties; (iii) produced 3.8 million documents equating to over 11 million pages; (iv) preserved and collected 99 hard drives, of which 93 were successfully imaged and over 70 were successfully decrypted; and (v) produced seven million pages of documents from prior litigations.

Add.1085. This only further underscores that JBR sought and received truly

massive discovery in this case.[2]

JBR also claimed in its prior petition that witnesses are or may become unavailable due to the passage of time. First, JBR argued that "Keurig's Chief Technology Officer Kevin Sullivan passed away; he had led all executive functions relating to the design work on the Keurig 2.0 brewer." Original Petition at 13-14. But JBR took Mr. Sullivan's deposition for two days, on August 7 and 22, 2014, and examined him on that topic extensively. Second, JBR claims that four of its expert witnesses are aging and "potentially close to retirement," and one has had health issues. Original Petition at 14. But each witness issued an expert report and was deposed in March 2021 (and, in the case of one of them, also sat for deposition twice before that as a fact witness). *See* Original Petition at 14.

Finally, JBR asserts that Judge Broderick's ruling on sealing motions somehow confirms that key evidence in its case is going "stale." Renewed Petition at 5-6. But Judge Broderick ruled only that requests to seal older information must be supported with more specificity. *See* Renewed Pet. Add.95. The sealing order does nothing to support JBR's unfounded claims of lost evidence.

---

[2] JBR also falsely claims that Keurig "erased the hard drives of 23 different Keurig" employees. Original Petition at 5. In fact, Magistrate Judge Cave found loss as to only three Keurig employees' hard drives, and loss of handwritten notes from just one. *See, e.g.*, Add.1084, Add.1086-1110, Add.1115-1116. Plaintiffs received tens of thousands of documents from each of the three employees' files. Plaintiffs failed to demonstrate any relevant information was lost and not available from the many other sources in discovery.

24

In sum, Judge Broderick is actively managing this massive antitrust MDL, and JBR's claims of undue delay and prejudice are wholly unfounded.  JBR has not shown a clear abuse of judicial discretion, and it is not entitled to the extraordinary relief it seeks.

## II.  JBR's Case Should Not Be Severed Or Remanded Until Pending Motions Are Resolved

JBR argues that this Court "has discretion to recommend to the JPML to transfer JBR's case to the Eastern District of California at any time prior to trial, including before summary judgment motions have been decided."  Renewed Petition at 8.  Strikingly, JBR does ***not*** tell the Court that it already sought that relief directly from the JPML, and the relief was denied.  Supp. App. 241-242.

Moreover, to obtain mandamus relief, it is not enough to establish that this Court has discretion to take an action or even that this Court might have chosen to take that action if it had reviewed the matter in the first instance.  *Orange Cnty. Water Dist. v. Unocal Corp.*, 584 F.3d 43 (2d Cir. 2009) ("[M]ere error, even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice.") (quoting *United States v. DiStefano*, 464 F.2d 845, 850 (2d Cir. 1972)).  Instead, to obtain mandamus relief JBR must establish that the denial of its request by the court below (and, in this case, the JPML as well) was a ***clear abuse*** of discretion.  *Linde*, 706 F.3d at 107.

25

JBR cannot come close to meeting this standard. Judge Broderick did not abuse his discretion. Remand from an MDL is inappropriate where, as here, pretrial proceedings are still ongoing. *See, e.g., In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1642813, at *10 (S.D.N.Y. Apr. 24, 2014) (pretrial proceedings are ongoing where a motion for summary judgment is pending). Judge Broderick appropriately considered whether remand will "insure the maximum efficiency for all parties and the judiciary." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, MDL No. 1945, 2011 WL 1046162, at *4 (S.D.N.Y. Mar. 22, 2011).

Judge Broderick found, and the JPML agreed, that remand of JBR's case would not serve the goal of maximum efficiency for all parties and the judiciary, because it would require duplicative proceedings that could create inconsistent rulings, and in fact would create substantial judicial inefficiency. Judge Broderick, who is familiar with the vast discovery record and issues in the MDL, is prepared to resolve the extensive summary judgment motions, which may result in summary judgment for Keurig or a substantial narrowing of the issues that the Eastern District of California would need to address on remand. *See In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002) (remand is not appropriate if continued coordination will promote judicial efficiency and minimize burden).

Not a single case cited by JBR supports its requested relief here.  Instead,

JBR's cases recognize that a district court has broad discretion to deny remand,

and the district court's decision is entitled to deference.  *See* Renewed Petition at 8,

citing *In re State St. Bank*, 2011 WL 1046162, at *3 (JPML "has consistently given

great weight to the transferee judge's determination" on motions to remand); *In re*

*Evergreen Valley Project Litig.*, 435 F. Supp. 923, 924 (J.P.M.L. 1977) (same).

JBR cites one case in which remand occurred prior to summary judgment

but, there, the cases in the MDL turned on distinct laws, whereas here, as both

Judge Broderick and the JPML have pointed out, there is substantial overlap

between JBR's legal claims and those of the other plaintiffs in this MDL.  *See*

Renewed Petition at 8, citing *In re Activated Carbon-Based Hunting Clothing*

*Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1199-1200 (D. Minn. 2012)

(remand prior to summary judgment may be appropriate where each case in the

MDL asserts state law claims and the relevant law differs for each case); *cf In re*

*Brand–Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1375

(J.P.M.L. 2003) (court resolved summary judgment on antitrust claims before

remanding); *McKay v. Novartis Pharmaceutical Corp.*, 751 F.3d 694, 698 (5th Cir.

2014) (court resolved summary judgment on common issues prior to remand).

JBR also cites *In re Harris County*, Case No. 21-3637, ECF No. 6-1 (6th

Cir. March 11, 2022).  But, in that case, the petitioner moved the district court for

remand on the basis that the MDL court lacked subject matter jurisdiction. *Id.* at 1. Here, JBR does not claim that the district court lacks subject matter jurisdiction. *See* Renewed Petition at 1 (acknowledging district court has jurisdiction). And in *Harris County*, the Sixth Circuit did not direct the district court to remand the petitioner's case—as JBR requests here—but rather directed the district court to rule on the motion for remand that had been pending for "at least three years." *Id.* at 1. Here, the district court has not refused to rule on JBR's motions for remand—to the contrary, the district court has ruled on this motion three times, and offered a well-reasoned explanation for its decision. And, as noted, JBR also sought remand from the JPML, which likewise denied this motion with a well-reasoned decision.

Finally, the Eastern District of California, where JBR originally filed, is one of the busiest judicial districts in the country. There are currently 1,308 pending cases per judgeship – which is more than double the caseload of the Southern District of New York, which stands at 624 cases per judgeship. Supp. App. 326-327 (National Judicial Caseload Profile). Chief Judge Mueller, who was assigned JBR's case in the Eastern District of California, had 134 motions outstanding according to the most recent six-month list, which cites "Heavy Criminal & Civil Caseload" as a reason for the pendency of nearly every motion on that list. Supp. App. 314-324 (Report of Motions Pending Over Six Months).

These facts are entirely consistent with the decisions by the district court and the JPML that the most efficient course is the ordinary one: JBR's case should remain in the MDL court for the remainder of pretrial proceedings, including resolution of the pending summary judgment and *Daubert* motions—many of which JBR filed or joined or which are filed against JBR jointly with other plaintiffs. JBR's demanded relief, unwinding and re-briefing these motions, would be burdensome for an already-busy court in the Eastern District of California and would unfairly increase burden on Keurig, which has borne massive expense caused by JBR already. The Eastern District of California would have to take up JBR's entire case from scratch, without the experience that Judge Broderick has developed overseeing the MDL. And the heavy caseload in the Eastern District makes it completely implausible that remand is a faster path to trial readiness for JBR's case, as compared to allowing Judge Broderick to rule, which may resolve JBR's claims in their entirety or substantially narrow the issues. Accordingly, this is not an appropriate case for granting the extraordinary relief that JBR requests.

## CONCLUSION

For the foregoing reasons, JBR's petition for a writ of mandamus should be denied.

Dated: April 18, 2023

/s/ Leah Brannon
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
lbrannon@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

BUCHANAN INGERSOLL & ROONEY, P.C
**Wendelynne J. Newton**
wendelynne.newton@bipc.com
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-8800

*Attorneys for Defendant-Respondent*
*Keurig Green Mountain, Inc.*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the word limit of Fed. R. App. P. 21(d)(1) because,

    excluding the parts of the document exempted by Fed R. App. P. 21(d),

    [X] this brief contains 6,660 words

    [ ] this brief uses monospaced type and contains [ ] lines

2.  This brief also complies with the typeface requirements of Fed. R. App. P.

    32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    [X] this brief has been prepared in a proportionally spaced typeface using

    Microsoft Word in 14-point Times New Roman font; or

    [ ] this brief or other document has been prepared in a monospaced typeface

    using [ ] in [ ].

_/s/ Leah Brannon_
CLEARY GOTTLIEB STEEN & HAMILTON LLP
**Leah Brannon**
lbrannon@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202-974-1500
Facsimile: 202-974-1999

_Counsel for Defendant-Respondent_
_Keurig Green Mountain, Inc._

31